**FILED**
**AUG 16 2005**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| BRIAN BRENDEN, | * | CIV. 04-4100 |
| Plaintiff, | * | |
| -vs- | * | OPINION AND ORDER GRANTING SUMMARY JUDGMENT |
| CITY OF MITCHELL, | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending is defendant's motion for summary judgment (Doc. 18).

## FACTS

The facts are recited in the light most favorable to the plaintiff. The following facts are not disputed (Docs. 21 & 23): Plaintiff Brian Brenden worked for the City of Mitchell for approximately 14 and one-half years. He worked as a water treatment plant maintenance operator during the last four years of his employment. Plaintiff had been prescribed Dilantin to control his seizures. On May 7, 2003, he had a seizure during the course of his employment while driving a city vehicle. There was a motor vehicle accident. Plaintiff's physician, Dr. Campbell, wrote a letter to the Department of Public Safety (for the State of South Dakota) recommending that his driver's license be revoked immediately. Plaintiff's driver's license was revoked. Plaintiff was suspended by the City of Mitchell following the May 7, 2003, accident with pay and full benefits until the investigation surrounding his accident was completed. The City obtained a medical release from Plaintiff during the course of its' investigation so it could secure information from his physicians to determine his ability to perform the essential duties of his job. Dr. Matos, Plaintiff's neurologist, sent a letter to the City saying Mr. Brenden had been diagnosed with epilepsy but had been noncompliant about

taking his Dilantin seizure medication. Plaintiff was notified of his termination by letter dated September 19, 2003. Mr. Brenden initiated a grievance procedure about his termination which was heard by the City Council on October 29, 2003. He was reinstated to his former position on or about October 10, 2003, pending his grievance hearing before the City Council. After the hearing the City Council upheld the termination decision. Plaintiff received his compensation and benefits from the May 7 accident until the decision by the City Council on October 29. Mr. Brenden's education includes a two-year vocational training program in electronics.

Plaintiff disputes certain matters about the following facts (Docs. 21 & 23): Mr. Brenden agrees the written job description includes the requirement for a valid driver's license, the requirement of exposure to moving mechanical parts, toxic or caustic chemicals and the requirement to work in high, precarious places. Plaintiff asserts, however, that the job description also provides that reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions of the job. Before the accident occurred, Plaintiff agrees his doctors permitted him to drive so long as he was taking his medication. He disputes that he was noncompliant about taking his medication. Plaintiff agrees that Dr. Matos stated that he (Mr. Brenden) should not climb to high places or operate heavy machinery, but Dr. Matos also said that he (Mr. Brenden) is able to work so long as he is not exposed to situations in which he could be injured if a seizure occurred. Plaintiff agrees that Dr. Campbell sent a letter in which she expressed the opinion that plaintiff is not disabled under the ADA because he is able to perform major life activities. Plaintiff, however, disagrees with her opinion, saying that even while on medication he still has seizures which impair his ability to work. Plaintiff agrees that Dr. Campbell said in her deposition that Plaintiff is not medically able to perform his job and that he is unable to have a valid driver's license. Plaintiff,

2

asserts, however, that Dr. Campbell did not say in her <u>deposition</u> (at the place identified by defendant in paragraph 22 in defendant's Statement of Undisputed Facts (Doc. 21)) that she was concerned about him being exposed to moving mechanical parts and being in high places. While there is no mention of mechanical parts or high places in her deposition at pp. 11-12, Dr. Campbell's letter to the City, the subject being discussed at page 12 of her deposition, does say she is concerned about Mr. Brenden being exposed to moving mechanical parts and his being in high places. Plaintiff agrees that Dr. Campbell said he was not compliant about taking his seizure medication, but, contrary to her opinion, he asserts he was compliant about taking his Dilantin. Plaintiff believes he was terminated because of his seizures and because he couldn't drive. He asserts, however, that his supervisor has testified that he could perform the essential functions of his job.

Plaintiff also made his own Additional Statement of Material Facts, including, among other matters, that: he was given a written statement from the City telling him he could not drive city vehicles. He takes Dilantin, an anti-seizure medication daily. He was never given instructions about the use of alcohol while taking Dilantin. His dosage of Dilantin was "never settled right for a number of years." His previous supervisor did not want him to drive City vehicles, so a position was created for him in the water treatment plant which did not require him to drive. Before he was ordered to drive on the day of the accident he was never told that he would have to drive again while on the job. His new supervisor was told by the City Public Works Director and the City Human Resource Director that Plaintiff could drive. Prior to the day of his motor vehicle accident, however, he was not required to drive and did not drive a City vehicle.

3

## DISCUSSION

"Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Maziarka v. Mills Fleet Farm, Inc., 245 F.3d 675, 678 (8th Cir. 2001).

> The ADA affords protection from discrimination to any qualified individual with a disability. To establish a prima facie case of discrimination under the ADA, [plaintiff] must show (1) that he has a disability within the meaning of the ADA, (2) that he is qualified to perform the essential function of his job, with or without reasonable accommodation, and (3) that he suffered an adverse employment action because of his disability. Discrimination includes not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]. The proof necessary to establish a prima facie case in discrimination cases is flexible and varies with the specific facts of each case.

Maziarka at 678-679. (Internal quotations and citations omitted.)

It is not disputed that Mr. Brenden suffers from epilepsy. Plaintiff suggests in his brief that "[h]is seizures momentarily impair his ability to see and hear and also affect his memory." Also, because he is unable to have a driver's license as a result of his epilepsy, he is unable to get work. "Therefore, Plaintiff falls within the protection of 42 U.S.C. § 12101 because his disability limits a major life activity— the ability to work." (Doc. 22, p. 3). Other than the mention in the brief, no evidence was presented in opposition to the summary judgment motion regarding Plaintiff's purported seeing, hearing and memory impairments. It is not disputed, therefore, that Plaintiff can perform all of the major life activities mentioned in 29 C.F.R. § 1630.2(i), except working. The dispute here is whether Plaintiff's epilepsy precludes him from being able to perform the major life activity of working. "To be substantially limited in the life activity of working, a plaintiff must be

4

'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Maziarka. at 679, citing 29 C.F.R. § 1630.2(j)(3)(i). "Inability to perform one particular job does not constitute a substantial limitation on working." Id. "A plaintiff must show that because of his impairment he has suffered a significant reduction in meaningful employment opportunities." Id. "The determination of disability is a highly fact-intensive one, and thus a conclusion that a certain condition, or a particular manifestation of a condition, does not substantially limit a particular plaintiff does not foreclose a determination that another individual with the same condition or analogous condition may be disabled within the meaning of the ADA." Id., (internal citation omitted).

Epilepsy is not always a condition which renders one disabled under the ADA. See Todd v. Academy Corp., 57 F.Supp.2d. 448, 453 (S.D. Tex. 1999) (epilepsy under control); Whitson v. Union Boiler Co., 47 Fed. Appx. 757 (6th Cir. 2002)[1] (epileptic pipefitter who refused to work at elevation was not disabled where he worked as a pipefitter both before and after his firing); and Arnold v. City of Appleton, Wis., 97 F.Supp.2d. 937 (E.D. Wis. 2000) (epilepsy controlled by medication).

Here the City fired Mr. Brenden because, in their view, he could not perform the essential functions of his job as a result of his epilepsy, i.e. because he did not have a valid driver's license, and because his job required him to be exposed to moving mechanical parts and to work in high places. In the City's view, therefore, he was disabled from performing this job. In Mr. Brenden's

---

[1]This is an unpublished opinion. It is cited as an example, and therefore has persuasive value, that epilepsy is not always an impairment which renders one disabled under the ADA. Eighth Circuit Local Rule 28(i) precludes the use of the case as controlling precedent.

view he was not disabled from performing this job with accommodations. Neither view answers the question about his disability under the ADA. One can be unable to perform a particular job because of one's condition, but yet not be disabled under the ADA. One can be able to perform a particular job with accommodations despite his condition and yet be disabled under the ADA. The test is whether Mr. Brenden is precluded from performing a class of jobs or broad range of classes of jobs. Plaintiff has presented no evidence from which a jury could conclude he is significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. Absent evidence from which a trier of fact could reasonably conclude he is substantially limited in the life activity of working, he is not disabled within the meaning of the ADA as a matter of law.

This case is unlike Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944(8th Cir. 1999). Here there is no evidence about the number and type of jobs from which Mr. Brenden is disqualified or the geographical area to which he has reasonable access. Here there is no evidence about the number of jobs that fit his vocational profile nor the number of jobs available to him given his functional limitations. Here there is no evidence about the percentage of reduction in employability nor the percent reduction in labor market access based on actual positions available. Here there is no evidence that Mr. Brenden has been unable to obtain employment after his termination because of his epilepsy. Here there is no evidence that his ability to work is limited at all, i.e., his doctors have not limited him from working a full work week, nor have they limited him in terms of type or amount of physical exertion. If work could be found which does not expose him to moving mechanical parts or high places and does not require him to drive, there is no evidence he is restricted even minimally from working. Judicial notice is taken that jobs exist in Mitchell, South

6

Dakota, which do not expose one to moving mechanical parts or high places and do not require a valid driver's license. Federal Rules of Evidence, Rule 201. Whether Mr. Brenden could perform the essential functions of his particular job for the City of Mitchell with or without accommodation and whether his epilepsy is controlled by medication might be considered to be disputed material facts[2]. Nonetheless, those are not material facts which render plaintiff able to survive summary judgment given the absence of evidence describing him as significantly restricted from being able to perform a class of jobs or a broad range of various classes of jobs.

"If [Brenden] fails to establish any element of his prima facie case, summary judgment is proper." Kellogg v. Union Pacific Railroad Company, 233 F.3d 1083, 1086 (8th Cir. 2000) (internal cites omitted). "As a first step [Brenden] must show that he is disabled within the meaning of the ADA . . ." Kellogg at 1087. Without reaching prima facie case factors (2) and (3), Mr. Brenden has not established as a first step that he is disabled within the meaning of the ADA. Plaintiff having failed to establish one of the elements of a prima facie case, the City is entitled to summary judgment. Because Mr. Brenden is not a person who is disabled as defined by the ADA, he is not a person protected against retaliation under the ADA. His retaliation claim that the City denied him a reasonable accommodation in favor of terminating him, therefore, also fails. His state law claim of wrongful discharge is premised upon his claim of an implied contract of employment. No evidence on this issue has been presented. South Dakota is an "at will" employment state. His state law claim for wrongful discharge also fails as a matter of law. It is, therefore, ORDERED that the

---

[2]Defendant argues that plaintiff's own testimony, standing alone, cannot create a disputed fact about his compliance in taking his prescribed medication in the face of blood tests revealing the absence of Dilantin in his bloodstream and in the face of his own doctor's testimony that he was noncompliant. That issue is not reached in this decision.

7

City's motion for summary judgment (Doc. 18) is GRANTED and Mr. Brenden's complaint is dismissed as a matter of law.

Dated this 16th day of August, 2005.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk

By [signature] Deputy

Westlaw.

47 Fed.Appx. 757
47 Fed.Appx. 757, 2002 WL 31205208
**(Cite as: 47 Fed.Appx. 757)**

Page 1

C
47 Fed.Appx. 757, 2002 WL 31205208
Briefs and Other Related Documents

This case was not selected for publication in the Federal ReporterNOT RECOMMENDED FOR FULL--TEXT PUBLICATIONSixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.This case was not selected for publication in the Federal Reporter.NOT RECOMMENDED FOR FULL--TEXT PUBLICATION Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court. Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)
United States Court of Appeals,Sixth Circuit.
Frederick Alan WHITSON, Plaintiff-Appellant,
v.
UNION BOILER COMPANY, Defendant-Appellee,
**No. 01-5294.**

Oct. 2, 2002.

Former employee filed action under Americans with Disabilities Act (ADA) alleging that employer terminated him as result of disability discrimination. The United States District Court for the Eastern District of Tennessee entered summary judgment in favor of employer, and employee appealed. The Court of Appeals held that: (1) employee was not disabled as result of his seizure disorder; (2) employer did not regard employee as disabled; and (3) employee was not disabled as result of his vision impairment.

Affirmed.

West Headnotes

[1] Civil Rights 78 ⇐1218(3)
78k1218(3) Most Cited Cases
(Formerly 78k173.1)
Pipefitter rigger's seizure disorder did not significantly restrict his ability to perform major life activity of working, and thus pipefitter was not "disabled" for purposes of ADA, even though he was fired for refusing to work at elevation because there was no place for him to tie his safety belt into life line and risk of having seizure and falling was too great, where he worked as pipefitter before and after his firing. Americans with Disabilities Act of 1990, § 3(2), 42 U.S.C.A. § 12102(2); 29 C.F.R. § 1630.2(i).

[2] Civil Rights 78 ⇐1218(6)
78k1218(6) Most Cited Cases
(Formerly 78k173.1)
Employer did not regard pipefitter rigger as having disability, and thus termination of pipefitter two days after he informed employer that he suffered seizure disorder did not violate ADA, where employer found him alternative work when he told his employer that he had disability that prevented him from performing his assigned work, and employer did not erroneously believe that his impairment was more limiting than it actually was. Americans with Disabilities Act of 1990, § 3(2)(A, C), 42 U.S.C.A. § 12102(2)(A, C).

[3] Civil Rights 78 ⇐1218(3)
78k1218(3) Most Cited Cases
(Formerly 78k173.1)
Pipefitter rigger's vision impairment did not significantly restrict his ability to perform any particular major life activity, and thus pipefitter was not "disabled" for purposes of ADA, even though his vision was 20/300 in his left eye as result of accident, where pipefitter wore non-prescription reading glasses only for reading, drove car and motorcycle, and had been working for 30 years as pipefitter and continued to work as pipefitter. Americans with Disabilities Act of 1990, § 3(2), 42 U.S.C.A. § 12102(2); 29 C.F.R. § 1630.2(i).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

47 Fed.Appx. 757                                                                                                           Page 2
47 Fed.Appx. 757, 2002 WL 31205208
(Cite as: 47 Fed.Appx. 757)

*758 On Appeal from the United States District Court for the Eastern District of Tennessee.

Before BOGGS and COLE , Circuit Judges; and BELL, District Judge. FN*

> FN* The Honorable Robert Holmes Bell , Chief United States District Judge for the Western District of Michigan, sitting by designation.

PER CURIAM.
**1 Plaintiff-Appellant Frederick Alan Whitson ("Whitson"), appearing *pro se,* appeals the district court's entry of summary judgment in favor of Union Boiler Company on Whitson's claim under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 2111 -17. Whitson claimed that he was disabled because of a seizure disorder and a vision impairment, and that Union Boiler discriminated against him on the basis of his disability by terminating his employment when he refused a work assignment. Union Boiler moved for summary judgment, claiming that Whitson was not disabled because his seizure disorder and vision impairment did not substantially limit any of his major life activities. The district court granted Union Boiler's motion for summary judgment because it concluded that no reasonable jury could find that Whitson is disabled under the ADA. We agree.

I.

On April 4, 1994, Whitson was hired by Union Boiler Company as a pipefitter rigger to install piping in and around tanks measuring 66 feet in diameter and 140 feet in height. During the first two days of his employment Whitson was assigned to work on the ground rigging pipe to a cable. On the third day, April 6, he was assigned to work inside the tank at elevation. Whitson declined the work assignment because it was unsafe. Whitson testified that the job required walking on two-foot-wide boards fourteen stories in the air without life lines and without a safety net. He advised his foreman that he had a seizure disorder and would not feel comfortable on that assignment. Whitson was reassigned to a job on the ground as a rigger and tool runner. On Friday, April 8, Whitson was again assigned to work inside the tank at elevation. Whitson reiterated his safety concerns on account of his seizure disorder and requested a transfer to a different job. Whitson was advised that he could work inside the tank, quit, or be fired. Whitson was fired for refusing a job assignment.

Whitson filed a claim with the Equal Employment Opportunity Commission, and after receiving his "right to sue" letter, timely filed this action.

II.

A. Standard of Review

This Court reviews de novo a district court's grant of summary judgment. *759*Holloway v. Brush, 220 F.3d 767, 772 (6th Cir.2000) (*en banc* ). Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).* The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).* A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id. at 252, 106 S.Ct. 2505.*

**2 Because Whitson is proceeding *pro se,* his pleadings are liberally construed and are held to less stringent standards than those prepared by attorneys. *Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)* ; *Williams v. Browman, 981 F.2d 901, 903 (6th Cir.1992).* Nevertheless, those who proceed without counsel must still comply with the procedural rules that govern civil cases. *McNeil v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

47 Fed.Appx. 757
47 Fed.Appx. 757, 2002 WL 31205208
(Cite as: **47 Fed.Appx. 757**)

Page 3

*United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). *See also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir.1989) ("Neither this Court nor other courts, however, have been willing to abrogate basic pleading essentials in pro se suits.").

B. Disability under the ADA

The ADA prohibits an employer from discriminating against a qualified individual with a disability because of that individual's disability. 42 U.S.C. § 12112. To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that:
> (1) he is disabled; (2) he is otherwise qualified for the position with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) his position remained open.

*Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 449 (6th Cir.1999).

Whitson's ability to show that he is "disabled" within the meaning of the ADA is a "threshold requirement" for recovery under the ADA. *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 253 (6th Cir.2000). Whether a person has a disability under the ADA is "an individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). An individual is "disabled" under the ADA only if he has, has a record of, or is regarded as having, a physical or mental impairment that "substantially limits" one or more of his "major life activities." 42 U.S.C. § 12102(2). *See also Burns*, 222 F.3d at 252. For purposes of the ADA, "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

The term substantially limits means:
> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

With respect to the major life activity of working, "substantially limits" means significantly *760 restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.**3 29 C.F.R. § 1630.2(j)(3)(i).

C. Evidence of Whitson's disability

Whitson produced evidence that he was hospitalized in 1985 for a seizure disorder and that he has experienced 12 seizures since then. He testified that because he does not know when he might suffer from a seizure, he avoids activities such as water skiing and certain carnival rides. It is undisputed that Whitson drives a car and a motorcycle. Although Whitson testified that the side effects of taking seizure medication, specifically Dilantin, substantially limit the major life activities of working, driving a car, thinking, walking, and seeing, the evidence is unrebutted that Whitson has not been on medication for his seizure disorder since his last seizure in 1990.

[1] Focusing first on major life activities besides work, the evidence is not sufficient to enable a reasonable jury to find that Whitson's seizure disorder significantly restricts his ability to perform any particular major life activity. Evidence that his medication substantially affected his major life activities in 1990 is not relevant to the issue of whether he was disabled in April 1994.

With respect to the major life activity of work, Whitson testified that he has been working as a pipefitter for thirty years, and that he continued to work as a pipefitter even after his first seizure. Prior to his experience at Union Boiler, he never told his employers

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

47 Fed.Appx. 757
47 Fed.Appx. 757, 2002 WL 31205208
**(Cite as: 47 Fed.Appx. 757)**

Page 4

about his seizure disorder, and he worked without any change in his work activities or work restrictions. Since being terminated from Union Boiler he has returned to work as a pipefitter. His work has always included working at elevation, on scaffolds, and with a safety belt tied into a life line.

Whitson testified that the only reason he was unable to perform the assigned job at Union Boiler was because there was no place for him to tie his safety belt into a life line, and with his seizure disorder the risk of having a seizure and falling was too great. Although Union Boiler contests the lack of a life line, on summary judgment the Court must view the evidence and draw all reasonable inferences in favor of Whitson, the non-moving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. Accordingly, for purposes of this appeal the Court assumes there was no life line and that the lack of a life line made the job at elevation particularly dangerous for an individual with a seizure disorder.

Nevertheless, evidence that Whitson was unable to do a single, particular job is not sufficient evidence of a disability for purposes of the ADA. Whitson did not produce evidence that he was significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *See* 29 C.F.R. § 1630.2(j). Because his seizure disorder has not affected his ability to find work as a pipefitter before or after his termination from Union Boiler, he has failed to create an issue of fact as to whether his seizure disorder constituted a substantial limitation in the major life activity of working.

\*\*4 It is true that an employer cannot avoid liability under the ADA simply by showing that the employee is able to perform other jobs because other companies choose to comply with the ADA and accommodate his disability. This Court has previously \*761 noted that "workplace accommodation of an individual's impairment cannot be taken into account in assessing whether that individual is substantially limited in the major life activity of working." *Black v. Roadway Express, Inc.,* 297 F.3d 445, 452 (6th Cir.2002). Whitson has not shown, however, that other employers "accommodated" his seizure disorder by supplying a life line. Whitson admitted that he never told previous employers about his seizure disorder. The provision of a safety tie-off or life line to those who work at elevation is not an accommodation given to those with seizure disorders, but rather a safety requirement applicable to all employees under occupational safety codes. *See, e.g.,* Union Boiler Company Safety Codes for Field Erection and Construction, at 18. Whitson's ability to find other pipefitting jobs where there were safety tie-offs is not an indication that other employers were willing to accommodate his disability.

Whitson has also suggested that he meets the disability requirements under the ADA because Union Boiler "regarded" him as having a disability. In support of this argument Whitson notes that he told Union Boiler about his seizure disorder and that Union Boiler accommodated his disability for two days by allowing him to work on the ground.

The definition of "disability" under the ADA includes being "regarded" as having "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." § 12102(2)(A) & (C). The intent behind this provision is to reach those cases in which "myths, fears and stereotypes" affect the employer's treatment of an individual. *Plant v. Morton Intern., Inc.,* 212 F.3d 929, 938 (6th Cir.2000). An individual may be "regarded" as having a disability if the employer "mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities," or "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton,* 527 U.S. at 489, 119 S.Ct. 2139. "In both cases, it is necessary that a covered entity entertain misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.*

[2] Whitson has not made either showing. He has not shown that the employer erroneously believed he had a substantially limiting impairment or that his impairment was more substantially limiting than it was. He has shown only that his employer found him alternative

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

47 Fed.Appx. 757
47 Fed.Appx. 757, 2002 WL 31205208
(Cite as: 47 Fed.Appx. 757)

Page 5

work when he told his employer that he had a disability that prevented him from performing his assigned work. As we have previously noted, an employee cannot show that the "regarded as" provision applies to him merely by pointing to evidence that the employer knew of his medical restrictions and modified his responsibilities based on them. *Plant,* 212 F.3d at 938. Whitson has not shown that the employer erroneously believed that his impairment was more limiting than it actually was. Accordingly, Whitson has not met his burden under the "regarded as" portion of the definition of disability under the ADA.

**5 We conclude that the district court correctly determined that the evidence was not sufficient to create an issue of fact for a jury as to whether Whitson was disabled or was regarded as having a disability as a result of his seizure disorder.

[3] In addition to his seizure disorder, Whitson argues that his vision impairment also substantially limited his ability to work, see and drive a car. The evidence does not support this argument. The evidence*762 reflects that Whitson suffered an injury to his left eye when he was twelve years old and that his vision is 20/300 in his left eye and 20/30 in his right eye. The evidence reflects that Whitson wears non-prescription reading glasses only for reading, that he drives a car and a motorcycle, and that he has been working for 30 years as a pipefitter and continues to work as a pipefitter. There is no evidence that his vision impairment prevents him from performing normal daily activities or work. *See Still v. Freeport-McMoran, Inc.,* 120 F.3d 50 (5th Cir.1997) (dismissing ADA claim of discharged worker because although worker was blind in one eye, his sight was not substantially limited as evidenced by his ability to perform normal daily activities such as driving). Because Whitson has not shown that his vision substantially limits one or more of the major life activities, he has not shown that his vision impairment constitutes a disability under the ADA.

III.

Upon de novo review we conclude that Whitson did not raise a genuine issue of material fact as to whether his seizure disorder and/or his vision impairment substantially limited him in any major life activities. Accordingly, we AFFIRM the district court's grant of Union Boiler's motion for summary judgment.

C.A.6 (Tenn.),2002.
Whitson v. Union Boiler Co.
47 Fed.Appx. 757, 2002 WL 31205208

Briefs and Other Related Documents (Back to top)

• 01-5294 (Docket) (Mar. 09, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.